UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MALLIKARJUN EAGA, *et al.*,<br><br>            *Plaintiffs*,<br><br> v.<br><br>U.S. CITIZENSHIP AND IMMIGRATION SERVICES, *et al.*,<br><br>            *Defendants*. | Civil Action No. 20-2682 (RBW) |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION TO DIMISS AND TRANSFER VENUE OR FOR SUMMARY JUDGMENT**

MICHAEL R. SHERWIN
Acting United States Attorney

BRIAN P. HUDAK
Acting Chief, Civil Division

CHRISTOPHER C. HAIR
Assistant United States Attorney

United States Attorney's Office
555 4th Street, N.W.
Washington, District of Columbia 20530
Telephone: (202) 252-2541
christopher.c.hairusdoj.gov

January 11, 2021                    *Counsel for Defendants*

# CONTENTS

*Table of Authorities*.................................................................................................. ii

INTRODUCTION ...................................................................................................... 1

BACKGROUND ........................................................................................................ 1

      A.    Statutory Framework ................................................................................. 1

      B.    Plaintiffs' Applications .............................................................................. 4

STANDARDS ............................................................................................................. 4

      A.    Severance under Rule 21 ........................................................................... 4

      B.    Transfer under 28 U.S.C. § 1404(a) .......................................................... 5

      C.    Dismissal under Rule 12(b)(1) .................................................................. 5

      D.    Summary Judgment under Rule 56 ............................................................ 6

ARGUMENT .............................................................................................................. 7

I.     Plaintiffs' claims should be severed and transferred to other, more appropriate judicial districts ........................................................................................... 7

      A.    Severance ................................................................................................... 7

      B.    Transfer ..................................................................................................... 9

II.    Some of Plaintiffs' claims are moot and must be dismissed ............................. 13

III.   USCIS is entitled to summary judgment on any remaining claims because it did not unreasonably delay the adjudication of Plaintiffs' applications .......................... 14

      A.    Factors 1 and 2 ......................................................................................... 15

      B.    Factor 4 ..................................................................................................... 17

      C.    Factors 3 and 5 ......................................................................................... 18

      D.    Factor 6 ..................................................................................................... 19

CONCLUSION ........................................................................................................... 20

# AUTHORITIES

*Page(s)*

Cases

*Abusadeh v. Chertoff*,
No. 06-2014, 2007 WL 2111036 (D.D.C. July 23, 2007) ...................................................... 13

*Aftab v. Gonzalez*,
597 F. Supp. 2d 76 (D.D.C. 2009) ......................................................................................... 13

*Al-Ahmed v. Chertoff*,
564 F. Supp. 2d 16 (D.D.C. 2008) .................................................................................... 12, 13

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986) ................................................................................................................. 6

*Aracely v. Nielsen*,
319 F. Supp. 3d 110 (D.D.C. 2018) ......................................................................................... 5

*Bemba v. Holder*,
930 F. Supp. 2d 1022 (E.D. Mo. 2013) ................................................................................. 15

*Brown v. District of Columbia*,
514 F.3d 1279 (D.C. Cir. 2008) ............................................................................................... 5

*Brustein & Manasevit, PLLC v. U.S. Dep't of Educ.*,
30 F. Supp. 3d 1 (D.D.C. 2013) .............................................................................................. 6

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986) ................................................................................................................. 6

*Chauhan v. Napolitano*,
746 F. Supp. 2d 99 (D.D.C. 2010) ......................................................................................... 13

*Davidson v. District of Columbia*,
736 F. Supp. 2d 115 (D.D.C.2010) .......................................................................................... 8

*Disparte v. Corp. Exec. Bd.*, 223 F.R.D. 7 (D.D.C. 2004) ..................................................... 8

*Dvorak v. U.S. Dep't of Homeland Sec.*,
No. 18-1941, 2019 WL 1491743 (D.D.C. Apr. 3, 2019) ....................................................... 13

*Gyau v. Sessions*,
No. 18-0407, 2018 WL 4964502 (D.D.C. Oct. 15, 2018) ................................................ 10, 12

*Hispanic Affairs Project v. Perez*,
206 F. Supp. 3d 348 (D.D.C. 2016) ......................................................................................... 4

*Huang v. Napolitano*,
    721 F. Supp. 2d 46 (D.D.C. 2010) ....................................................... 13

*In re Am. Fed'n of Gov't Emps.*,
    837 F.2d 503 (D.C. Cir. 1988) .......................................................... 19

*In re Barr Labs., Inc.*,
    930 F.2d 72 (D.C. Cir. 1991) ........................................................ 16, 17

*In re Bluewater Network*,
    234 F.3d 1305 (D.C. Cir. 2000) ......................................................... 14

*In re Core Commc'ns, Inc.*,
    531 F.3d 849 (D.C. Cir. 2008) .......................................................... 14

*In re United Mine Workers of Am. Int'l Union*,
    190 F.3d 545 (D.C. Cir. 1999) .......................................................... 15

*J.M.A. v. Sessions*,
    319 F. Supp. 3d 290 (D.D.C. 2018) ................................................... 4, 7

*Larsen v. U.S. Navy*,
    525 F.3d 1 (D.C. Cir. 2008) ............................................................ 13

*Law Office of Azita Mojarad v. Aguirre*,
    No. 05-0038, 2006 WL 785415 (D.D.C. Mar. 27, 2006) ......................... 2

*Liberty Fund, Inc. v. Chao*,
    394 F. Supp. 2d 105 (D.D.C. 2005) ........................................... 17, 18, 19

*M.K. v. Tenet*,
    216 F.R.D. 133 (D.D.C. 2002) .......................................................... 8

*Mashpee Wampanoag Tribal Council, Inc. v. Norton*,
    336 F.3d 1094 (D.C. Cir. 2003) ............................................... 16, 17, 18

*McAfee, LLC v. USCIS*,
    No. 19-2981, 2019 WL 6051559 (D.D.C. Nov. 15, 2019) .................. 9, 10, 12

*McNutt v. General Motors Acceptance Corp.*,
    298 U.S. 178 (1936) ................................................................... 6

*Mittleman v. Postal Regulatory Com'n*,
    757 F.3d 300 (D.C. Cir. 2014) .......................................................... 13

*Mohammadi v. Scharfen*,
    609 F. Supp. 2d 14 (D.D.C. 2009) ...................................................... 13

*Montgomery v. STG Int'l, Inc.*,
   532 F. Supp. 2d 29 (D.D.C. 2008) ...................................................................................... 11

*Mosley v. Gen. Motors Corp.*,
   497 F.2d 1330 (8th Cir. 1974) ............................................................................................. 8

*Pasem v. USCIS*, No. 20-0344,
   2020 WL 2514749 (May 15, 2015) ................................................................ 1, 10, 11, 12, 13

*Pinson v. U.S. Dep't of Justice*,
   74 F. Supp. 3d 283 (D.D.C. 2014) .............................................................................. 4, 7, 8

*Rann v. Chao*,
   154 F. Supp. 2d 61 (D.D.C. 2001) ...................................................................................... 6

*Ravulapalli v. Napolitano*,
   773 F. Supp. 2d 41 (D.D.C. 2011) ................................................................................. 5, 10

*Rice v. Sunrise Express, Inc.*,
   209 F.3d 1008 (7th Cir. 2000) ............................................................................................. 4

*Ryan v. Dedvukaj*,
   No. 09-14178, 2009 WL 3809813 (E.D. Mich. Nov. 13, 2009) ............................................ 15

*Save Jobs USA v. U.S. Dep't of Homeland Sec.*,
   105 F. Supp. 3d 108 (D.D.C. 2015) .................................................................................... 3

*Schmidt v. United States*,
   749 F.3d 1064 (D.C. Cir. 2014) ........................................................................................ 13

*Scolaro v. D.C. Bd. of Elections & Ethics*,
   104 F. Supp. 2d 18 (D.D.C. 2000) ...................................................................................... 6

*SEC v. Savoy Indus. Inc.*,
   587 F.2d 1149 (D.C. Cir. 1978) .......................................................................................... 5

*Spaeth v. Mich. St. Univ. Coll. of Law*,
   845 F. Supp. 2d 48 (D.D.C. 2012) ............................................................................. 4, 7, 8

*Steel Co. v. Citizens for a Better Env't*,
   523 U.S. 83 (1998) ............................................................................................................. 6

*Telecomms. Research & Action Ctr. v. F*CC,
   ("TRAC"), 750 F.2d 70 (D.C. Cir. 1984) ................................................................. 14, 15, 19

*Trout Unlimited v. U.S. Dep't of,*
   *Ag.*, 944 F. Supp. 13 (D.D.C. 1996) ..................................................................................... 5

iv

*Utah Wilderness Alliance v. Norton*,
  315 F. Supp. 2d 82 (D.D.C. 2004) ........................................................................ 5

*Van Dusen v. Barrack*,
  376 U.S. 612 (1964) ............................................................................................. 5

*W. Watersheds Project v. Pool*,
  942 F. Supp. 2d 93 (D.D.C. 2013) ...................................................................... 11

*Yavari v. Pompeo*,
  No. 19-02524, 2019 WL 6720995 (C.D. Cal. Oct. 10, 2019) ............................. 16

**Statutes**

5 U.S.C. § 706(1) ......................................................................................................... 15

8 U.S.C. § 1101(a)(15)(H) ............................................................................................. 3

8 U.S.C. § 1184 ............................................................................................................. 2

8 U.S.C. § 1184(g)(4) .................................................................................................... 2

8 U.S.C. § 1571(b) ...................................................................................................... 16

8 U.S.C. §§ 1101 ........................................................................................................... 2

28 U.S.C. § 1391(e)(1) ................................................................................................. 10

28 U.S.C. § 1404(a)05 ............................................................................................... i, 5

28 U.S.C. § 1651(a) ..................................................................................................... 15

Pub. L. No. 106–313 ...................................................................................................... 2

Pub. L. No. 107–273 ...................................................................................................... 2

**Rules**

Fed. R. Civ. P. 56(a) ..................................................................................................... 7

Fed. R. Civ. P. 12(b)(1) ................................................................................................. 6

Fed. R. Civ. P. 21 .......................................................................................................... 5

**Regulations**

8 C.F.R. § 103.2(b)(9) .............................................................................................. 4, 19

8 C.F.R. § 214.2(h)(9)(iv) .............................................................................................. 3

8 C.F.R. § 274a.13 ...................................................................................................... 3

20 C.F.R. § 655.730(a).............................................................................................. 2

80 Fed. Reg. 10 .......................................................................................................... 3

## Other Authorities

*Federal Practice and Procedure* § 1689 ..................................................................... 5

## INTRODUCTION

Plaintiffs are 10 individuals from all over the country (but not the District of Columbia) who, at the time of suit, had certain applications for nonimmigrant benefits pending at various service centers operated by U.S. Citizenship and Immigration Services ("USCIS") in four different cities (but not the District of Columbia). USCIS respectfully moves to sever these various claims, each of which presents its own circumstances, and transfer them to the more appropriate judicial districts wherein the service centers adjudicating the applications are located. *See Pasem v. USCIS*, No. 20-0344, 2020 WL 2514749 (May 15, 2015).

Alternatively, should the Court allow any claims to remain here, it should dismiss as moot the Plaintiffs (9 of the 10) whose applications have already been decided by USCIS in the normal course of its processing. For the remaining Plaintiff (assuming her claim is not likewise mooted in the meantime), the Court should enter judgment in favor of Defendants because USCIS has not unreasonably delayed adjudicating their immigration applications. USCIS typically adjudicates the types of immigration applications submitted by Plaintiffs within a matter of months, appropriately takes the time necessary for the in-person collection of biometric information (which is currently justifiably delayed due to a global pandemic), and Plaintiffs may not use a mandamus action to simply skip ahead of other applicants in line. There can therefore be no showing of delay sufficient to merit judicial relief.

## BACKGROUND

A.   *Statutory Framework*

The Immigration and Nationality Act ("INA"), 8 U.S.C. §§ 1101, *et seq.*, regulates the admission of aliens into the United States, including the temporary admission of nonimmigrants for a particular purpose. Relevant here, the H-1B program allows for the temporary admission of

foreign citizens to work for American employers in "specialty occupation[s]," as defined by the Act. 8 U.S.C. § 1101(a)(15)(H)(i)(B).  An employer seeking to hire a nonimmigrant employee must file an H-1B petition on Form-129, Petition for a Nonimmigrant Worker, with USCIS.  8 C.F.R. § 214.2(h)(2)(i)(A).[1]  If USCIS approves the petition, the nonimmigrant employee's approved status is valid for an initial period of up to three years and can be extended for up to an additional three years.     8 U.S.C. § 1184(g)(4); 8 C.F.R. §§ 214.2(h)(9)(iii)(A)(1), 214.2(h)(15)(ii)(B)(1).  For individuals who are the beneficiaries of certain pending or approved employment-based petitions for immigrant status or labor-certification applications, H-1B status may be further extended beyond the six-year maximum.  *See Am. Competitiveness in the Twenty–First C. Act*, Pub. L. No. 106–313, §§ 104(c), 106(a) (2000), as amended by 21st C. Dep't. of Justice Appropriations Authorization Act, Pub. L. No. 107–273, § 11030A (2002) (codified at 8 U.S.C. § 1184 note).  USCIS typically considers H-1B petitions in the order in which they are received, but employers may opt for premium processing, under which USCIS guarantees adjudication within fifteen days in exchange for a fee.  *See Law Office of Azita Mojarad v. Aguirre*, No. 05-0038, 2006 WL 785415, at *1 (D.D.C. Mar. 27, 2006).

The INA also authorizes nonimmigrant "H-4 status," which allows the spouse and minor children of H-1B nonimmigrants to be admitted with the H-1B nonimmigrant to the United States.  *See* 8 U.S.C. § 1101(a)(15)(H).  In order for an applicant within the United States to apply for or extend H-4 status, the applicant must submit a completed Form I-539, Application to Extend/Change Nonimmigrant Status.  Once approved, the H-4 status is subject to the same period of admission as the related H-1B status.  *See* 8 C.F.R. § 214.2(h)(9)(iv).  Nonimmigrants with H-

---

[1]     Before an employer may seek an H-1B visa for a prospective nonimmigrant employee, it must make various declarations in a Labor Condition Application with the Department of Labor. *See* 20 C.F.R. § 655.730(a).

4 status are allowed to live—but not work—in the United States.  *See Save Jobs USA v. U.S. Dep't of Homeland Sec.*, 105 F. Supp. 3d 108, 111 (D.D.C. 2015).  In 2015, however, USCIS modified existing regulations to allow certain H-4 nonimmigrants to apply for employment authorization if the related H-1B nonimmigrant has shown an intent to stay in the United States and become a legal permanent resident.  80 Fed. Reg. 10,284, 10,285 (Feb. 25, 2015); *see also* 8 C.F.R. §§ 214.2(h)(9)(iv), 274a.12(c)(26).

To request employment authorization, an eligible H-4 nonimmigrant must file an Application for Employment Authorization (Form I-765) in accordance with 8 C.F.R. § 274a.13, and provide evidence that, among other things, establishes the H-4 applicant's eligibility for the benefit, the relationship between the H-4 applicant and the H-1B nonimmigrant, and the eligibility of the H-1B nonimmigrant.  8 C.F.R. § 214.2(h)(9)(iv).  Effective March 11, 2019, USCIS now requires all applicants submitting an I-539 application for H-4 status to appear at the application support center closest to the applicant's primary address and provide biometric information (i.e., fingerprints, photograph, or signature).  *See* https://go.usa.gov/xdYxV.[2]  If approved, the H-4 nonimmigrant will receive an H-4 Employment Authorization Document ("EAD").

Because the adjudication of the application for H-4 status (Form I-539) and the application for employment authorization (Form I-765) are interrelated and submitted to the same USCIS locations, USCIS allows applicants to file both forms concurrently.  80 Fed. Reg. at 10,298.  But USCIS cannot adjudicate the Form I-765 until a determination is made on the underlying Form I-539.  *Id.* at 10,297.

---

[2] USCIS may require any applicant or group of applicants to appear for the collection of biometric information.  8 C.F.R. § 103.2(b)(9).

B.      *Plaintiffs' Applications*

Plaintiffs are 10 individuals residing in various states (but not the District of Columbia), each of whom has filed either an I-539 application for H-4 status (or extension of status) or an I-765 application for EAD or both, which applications are being or have been processed at one of USCIS's four service centers.  *See* Compl. (ECF No. 1) ¶ 13.  Plaintiffs contend that USCIS unreasonably delayed the adjudication of their applications because they have been waiting more than 6 months for adjudication of their H-4 and EAD applications.  *Id.* ¶ 32.  As of this filing, however, 9 of the 10 Plaintiffs have had their applications adjudicated in the normal course of USCIS's processing and many of the remainder are delayed due to the closure of application support centers during the global COVID-19 pandemic.  *See* Peace Decl., App'x 1.

## STANDARDS

A.      *Severance under Rule 21*

Federal Rule of Civil Procedure 21 provides the Court with broad discretion to "sever any claim against a party."  Fed. R. Civ. P. 21; *see also M.M.M. on behalf of J.M.A. v. Sessions*, 319 F. Supp. 3d 290, 294 (D.D.C. 2018); *Hispanic Affairs Project v. Perez*, 206 F. Supp. 3d 348, 373 (D.D.C. 2016); *Spaeth v. Mich. St. Univ. Coll. of Law*, 845 F. Supp. 2d 48, 55 n.11 (D.D.C. 2012); 7 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 1689 (3d ed.) ("Even when venue is proper as to all defendants, the court may sever a claim against a party and transfer it to a more convenient forum . . . .").  If a claim is severed, the severed claim will proceed as a separate and independent cause of action and will result in a separate judgment.  *M.M.M.*, 319 F. Supp. 3d at 294; *Pinson v. U.S. Dep't of Justice*, 74 F. Supp. 3d 283, 288 n.7 (D.D.C. 2014); *see also Rice v. Sunrise Express, Inc.*, 209 F.3d 1008, 1013 (7th Cir. 2000) ("Under Rule 21 . . . severance creates two separate actions where previously there was but one.").

4

B.      *Transfer under 28 U.S.C. § 1404(a)*

Under 28 U.S.C. § 1404(a), a district court may transfer a civil action to any other district "[f]or the convenience of the parties and witnesses, in the interest of justice" so long as the transferee district is one where the case "might have been brought."  Subsection 1404(a) affords the Court broad discretion in determining whether transfer to another district is appropriate.  *See Ravulapalli v. Napolitano*, 773 F. Supp. 2d 41, 55 (D.D.C. 2011) (citing *SEC v. Savoy Indus. Inc.*, 587 F.2d 1149, 1154 (D.C. Cir. 1978)).  The moving party bears the burden of establishing that plaintiff's choice of forum is inappropriate and that the case should be transferred to another venue. *See So. Utah Wilderness Alliance v. Norton*, 315 F. Supp. 2d 82, 86 (D.D.C. 2004).  To meet that burden, the moving party must make two showings.  First, the movant must establish that the plaintiff could have brought the action in the proposed transferee district.  *See Aracely v. Nielsen*, 319 F. Supp. 3d 110, 127–28 (D.D.C. 2018) (citing *Van Dusen v. Barrack*, 376 U.S. 612, 616-17 (1964).  Second, the movant must show that "considerations of convenience and the interest of justice weigh in favor of transfer to that district."  *See Aracely*, 319 F. Supp. 3d at 127 (citing *Trout Unlimited v. U.S. Dep't of Ag.*, 944 F. Supp. 13, 16 (D.D.C. 1996)).  In evaluating whether defendants have made this second showing, courts typically weigh several private- and public-interest factors.  *See id.*; *Ravulapalli*, 773 F. Supp. 2d at 55-56.

C.      *Dismissal under Rule 12(b)(1)*

Under Federal Rule of Civil Procedure 12(b)(1), a claim must be dismissed if a district court lacks jurisdiction to entertain the claim. In deciding a motion under Rule 12(b)(1), a court must "accept as true all of the factual allegations contained in the complaint" and draw all reasonable inferences in favor of the plaintiff, *Brown v. District of Columbia*, 514 F.3d 1279, 1283 (D.C. Cir. 2008), but courts are "not required . . . to accept inferences unsupported by the facts or

legal conclusions that are cast as factual allegations," *Rann v. Chao*, 154 F. Supp. 2d 61, 64 (D.D.C. 2001). Further, the "court may consider such materials outside the pleadings as it deems appropriate to resolve the question whether it has jurisdiction in the case." *Scolaro v. D.C. Bd. of Elections & Ethics*, 104 F. Supp. 2d 18, 22 (D.D.C. 2000). Ultimately, the plaintiff bears the burden of establishing the Court's jurisdiction, *McNutt v. General Motors Acceptance Corp.*, 298 U.S. 178, 182-83 (1936), and where jurisdiction does not exist, "the court cannot proceed at all in any cause," *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998). A claim that has become moot is subject to dismissal for lack of jurisdiction under Rule 12(b)(1)." *Brustein & Manasevit, PLLC v. U.S. Dep't of Educ.*, 30 F. Supp. 3d 1, 5 (D.D.C. 2013) ("Rule 12 (b)(1) is the proper mechanism for a defendant to assert that an action is moot.").

  D. *Summary Judgment under Rule 56*

  Summary judgment is appropriate when the pleadings and the evidence demonstrate that there "is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party moving for summary judgment bears the initial responsibility of showing an absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). In deciding whether a genuine issue of material fact exists, the Court must make all inferences in the non-movant's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). A non-moving party, however, must establish more than the "mere existence of a scintilla of evidence" in support of its position. *Id.* at 252. By pointing to the absence of evidence proffered by the non-moving party, a moving party may succeed on summary judgment. *Celotex*, 477 U.S. at 322. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50.

## ARGUMENT

**I.    Plaintiffs' claims should be severed and transferred to other, more appropriate judicial districts.**

The 10 Plaintiffs in this case reside in 7 different states—none are from the District of Columbia—and their respective applications for H-4 status (or extension of status) or EAD are being or have been adjudicated by one of four different USCIS service centers in either Nebraska, Vermont, Texas, or California.  Despite the geographically dispersed nature of both the residences of the Plaintiffs and the USCIS offices handling their applications, Plaintiffs attempt to pool their various claims and pour them into this Court.  The Court should exercise its discretion to sever the many claims in this case and transfer them to more appropriate districts.

### A.    Severance

As a first step to effectuating transfer, the Court should sever Plaintiffs' individual claims, each of which turns on its own unique facts and circumstances.  Cases transferred pursuant to § 1404(a) must be transferred in their entirety.  *See M.M.M.*, 319 F. Supp. 3d at 295 (citing 15 Wright, Miller & Kane, *Federal Practice and Procedure* § 3846 (4d ed. 2018)).  Where all the claims in a single case cannot be transferred to a single transferee district, the Court has authority to sever those claims as a precursor to transfer.  *See Pinson*, 74 F. Supp. 3d at 288 (severing claims prior to transferring venue under § 1404(a)); *Spaeth*, 845 F. Supp. 2d at 57 n.13 (D.D.C. 2012) (same).  "In determining whether to join or sever claims, courts employ the permissive joinder requirements articulated in Rule 20(a), which permits claims to be joined if: 1) the claims arise from the same transaction or occurrence, or series of transactions or occurrences; and 2) any question of law or fact common to all plaintiffs arose in the action."  *Pinson*, 74 F. Supp. 3d at 288 (citing Fed. R. Civ. P. 20(a)).  Whether or not a set of claims meet the permissive joinder requirements, however, the district court may, at its discretion, sever claims to effectuate transfer.

*See id.*; *see also M.K. v. Tenet*, 216 F.R.D. 133, 137 (D.D.C. 2002) ("The determination of a motion to sever is within the discretion of the trial court.") (citation omitted).

Severance is warranted here whether the Court chooses to apply the permissive joinder requirements of Rule 20(a) or exercise its discretion.   Under Rule 20(a), to satisfy the "same transaction or occurrence" prong of Rule 20(a), the claims must be logically related.  *See Davidson v. District of Columbia*, 736 F. Supp. 2d 115, 119 (D.D.C. 2010) ("'[A]ll 'logically related' events entitling a person to institute a legal action against another generally are regarded as comprising a transaction or occurrence.'").  "The movant, however, cannot join parties 'who simply engaged in similar types of behavior . . . [but are] otherwise unrelated; some allegation of concerted action . . . is required.'"  *Pinson*, 74 F. Supp. 3d at 289 (quoting *Spaeth*, 845 F. Supp. 2d at 53).  The other prong of Rule 20(a) requires that "some common question of law or fact as to all of the plaintiffs' claims, [but] not that all legal and factual issues be common to all the plaintiffs."  *Disparte v. Corp. Exec. Bd.*, 223 F.R.D. 7, 10-11 (D.D.C. 2004) (citing *Mosley v. Gen. Motors Corp.*, 497 F.2d 1330, 1334 (8th Cir. 1974)).

The Plaintiffs in this case do not satisfy these requirements.  Each of the 10 individual Plaintiffs claims that USCIS unreasonably delayed the adjudication of his or her H-4 and/or EAD application.  *See* Compl. ¶ 13.  But the similarities end there.  The Plaintiffs filed their applications on different dates, and their applications have been pending for significantly different periods of time.  *See* Peace Decl., App'x 1.  The average times required to process the different applications is not the same.  *See* Peace Decl. ¶ 5 (noting the average wait time at the Texas Service Center).  Also, Plaintiffs' applications are or were handled at four different USCIS service centers around the country, each of which presents its own unique circumstances regarding resources and average

wait times.  For these reasons, Plaintiffs' claims are not logically related, present different factual circumstances, and should be severed under the criteria of Rule 20(a).

But even if the Court determines that the claims here are eligible for permissive joinder under Rule 20(a), it should nevertheless exercise its discretion and sever them in order to effectuate transfers to more appropriate judicial districts.  Indeed, "[c]ourts have discretion to sever parties to effectuate transfer for judicial economy and convenience of the parties."  *Pasem*, 2020 WL 2514748, at *4 (severing mandamus claims similar to those at issue here for purposes of transferring them to the judicial districts wherein the service centers processing the underlying applications were located).

B.    *Transfer*

"A § 1404 motion to transfer poses two questions: Could the plaintiff have sued in the transferee court?  And if so, should it have?"  *McAfee, LLC v. USCIS*, No. 19-2981, 2019 WL 6051559, at *1 (D.D.C. Nov. 15, 2019).  The answers to these questions here permit and support transfer outside of the District of Columbia.  This case presents precisely the same transfer situation as *Pasem*, and the Court should transfer these claims for the same reasons.

The first question turns on whether venue is proper in the transferee district under the federal venue statute.  *See id.*  That statute allows a suit against a federal officer or employee to be brought "in any district where a defendant resides, where the underlying claim arose, or—if no real property is involved—where the plaintiff resides."  28 U.S.C. § 1391(e)(1).  Under this provision, each of the Plaintiffs in this case could have brought his or her claim in at least two districts other than the District of Columbia.  *First*, because each of the Plaintiffs resides in the United States (but not in the District of Columbia) and because this case involves no real property, he or she could have filed suit in the district of his or her residence.  *See id.* § 1391(e)(1)(C).

*Second*, in APA cases such as this, the underlying claim typically arises "where the decisionmaking process occurred." *Gyau v. Sessions*, No. 18-0407, 2018 WL 4964502, at *1 (D.D.C. Oct. 15, 2018).  Here, Plaintiffs' H-4 and EAD applications were handled by one of four USCIS service centers in other judicial districts: the Nebraska Service Center in Lincoln, Nebraska (D. Neb.), the Texas Service Center in Dallas, Texas (N.D. Tex.), the Vermont Service Center in Saint Albans, Vermont (D. Vt.), or the California Service Center in Laguna Niguel, California (C.D. Cal.).  *See* Peace Decl., App'x 1.  Each of the Plaintiffs could have brought his or her claims in the judicial district housing the USCIS service center processing his or her application.  *See* *Pasem*, 2020 WL 2514749, at *3 (plaintiffs could have brought mandamus claims for adjudication of H-4 and EAD applications in the judicial districts where the service centers are located); *McAfee*, 2019 WL 6051559, at *1 (plaintiff could have brought action challenging adjudication of its H-1B petition in the Central District of California because the petition was processed by USCIS's California Service Center).  Due to the number of individual Plaintiffs in this case and the vast disparity in their residences, *see* App'x 1, Defendants propose that the more efficient and appropriate course would be for the Court to sever the claims and transfer them to one of the four districts housing the USCIS service centers responsible for adjudicating Plaintiffs' H-4 and EAD applications.

In answering the second transfer question—whether the case should have been brought elsewhere—courts in this district weigh a series of private- and public-interest factors. *See* *Ravulapalli v. Napolitano*, 773 F. Supp. 2d 41, 55-56 (D.D.C. 2011).  The private-interest factors typically include: "1) the plaintiff's choice of forum, 2) the defendant's choice of forum, 3) where the claim arose, 4) the convenience of the parties, 5) the convenience of the witnesses, particularly if important witnesses may actually be unavailable to give live trial testimony in one of the

districts, and 6) the ease of access to sources of proof." *Montgomery v. STG Int'l, Inc.*, 532 F. Supp. 2d 29, 32-33 (D.D.C. 2008). "The public factors usually weighed in considering a motion to transfer include: 1) the transferee's familiarity with the governing laws, 2) the relative congestion of each court, and 3) the local interest in deciding local controversies at home." *Id.* at 34.

With regard to the private interests, all but one support transfer. Plaintiffs' claims all arose elsewhere in districts housing the USCIS service centers responsible for handling their respective applications. As a result, those districts will be more convenient for the government, potential witnesses, and evidence because of their proximity to the employees who are responsible for processing plaintiffs' applications. *See Pasem*, 2020 WL 2514749, at *4 (finding that these private interests favor transfer of similar mandamus action to service center districts); *W. Watersheds Project v. Pool*, 942 F. Supp. 2d 93, 97-103 (D.D.C. 2013) (transferring case seeking to compel agency action unlawfully delayed to the district in which the field office responsible for the relevant decision was located based in part on these factors). Plaintiffs, however, would enjoy no convenience from litigating their case here because they are geographically dispersed all over the country and one of their counsel of record, Michael E. Piston, has his offices in New York, NY. *See* App'x 1; Compl. at pp. 10-11. Defendants, for their part, prefer transfer to the service-center districts. And while the Plaintiffs (or Plaintiffs' counsel) apparently prefer to amalgamate their claims in this district, "such deference is minimized when the forum chosen is not the plaintiff's home forum and no plaintiff resides in the District of Columbia. In addition, deference to the plaintiff's choice of forum can be overcome when the balance of convenience is strongly in favor of the defendant." *Pasem*, 2020 WL 2514749, at *4 (quotation marks and citations omitted). That is the situation here.

The public factors also mostly favor transfer.  The first public interest—familiarity with the governing laws—appears neutral. Federal law governs this case, and federal courts are generally regarded as "equally familiar" with applying federal law.  *Pasem*, 2020 WL 2514749, at *3 (citing *Al-Ahmed v. Chertoff*, 564 F. Supp. 2d 16, 20 (D.D.C. 2008)).  Each court's relative congestion and caseload is also largely neutral.  This district has a larger number and percentage of civil cases that have been pending for more than three years than does the Central District of California, the District of Vermont, and the District of Nebraska.[3]  This is particularly true of the District of Nebraska, where most of the claims would be transferred.  That district has only 33 civil cases that have been pending for more than three years (5% of its total) compared to 663 in this district (13% of the total).  While the Northern District of Texas does have more three-year-old cases than this district, it resolves civil cases in roughly the same amount of time: 6.7 months there compared to 5.6 months here.  *See Pasem*, 2020 WL 2514749, at *3 (finding this factor neutral in these circumstances).  The third public interest—the local interest in resolving the controversy— favors transfer because "courts have 'a local interest in having localized controversies decided at home,'" including even "controversies requiring judicial review of an administrative decision." *Pasem*, 2020 WL 2514749, at *3 (quoting *Gyau*, 2018 WL 4964502, at *2 (internal quotations omitted)).

For these reasons the private- and public-interest factors, on balance, favor transfer.  The Court should therefore sever Plaintiffs' claims and transfer each of them to the judicial district encompassing the USCIS service center responsible for completing the adjudication each plaintiff seeks to compel.  *See McAfee*, 2019 WL 6051559, at *2 (applying the same analysis and transferring a suit challenging USCIS's adjudication of a petition for H-1B status to the judicial

---

[3] *See* https://www.uscourts.gov/sites/default/files/data_tables/fcms_na_distprofile0630.2019.pdf

district housing the service center responsible for handling the petition); *see also Chauhan v. Napolitano*, 746 F. Supp. 99, 105 (D.D.C. 2010) (transferring mandamus case to district where immigration applications were pending); *Huang v. Napolitano*, 721 F. Supp. 2d 46, 56 (D.D.C. 2010); *Aftab v. Gonzalez*, 597 F. Supp. 2d 76, 79 (D.D.C. 2009) (same); *Al-Ahmed v. Chertoff*, 564 F. Supp. 2d 16, 18 (D.D.C. 2008) (same); *Abusadeh v. Chertoff*, No. 06-2014, 2007 WL 2111036, at *9 (D.D.C. July 23, 2007) (same); *Mohammadi v. Scharfen*, 609 F. Supp. 2d 14, 18-19 (D.D.C. 2009).

## II.    Some of Plaintiffs' claims are moot and must be dismissed.

USCIS has already adjudicated the applications of 9 Plaintiffs in the normal course of its standard processing, thereby rendering those claims moot and depriving the Court of jurisdiction to consider them.  A claim becomes moot "when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome." *Schmidt v. United States*, 749 F.3d 1064, 1068 (D.C. Cir. 2014) (quoting *Larsen v. U.S. Navy*, 525 F.3d 1, 3- (D.C. Cir. 2008)).  This can occur when "the court can provide no effective remedy because a party has already obtained all the relief that it has sought." *Mittleman v. Postal Regulatory Com'n*, 757 F.3d 300, 303 (D.C. Cir. 2014) (internal quotation marks omitted).  In this case, the declaration submitted with this motion demonstrates that USCIS has now adjudicated the pending applications of 9 Plaintiffs, as reflected by the entries in Appendix 1.  All of those claims should be dismissed as moot.  *See Pasem*, 2020 WL 2514749, at *5 (dismissing moot claims prior to transfer in precisely these circumstance *Dvorak v. U.S. Dep't of Homeland Sec.*, No. 18-1941, 2019 WL 1491743, at *1 (D.D.C. Apr. 3, 2019) (dismissing action as moot because "plaintiffs have received the relief they requested: final action on their pending visa applications").

**III.    USCIS is entitled to summary judgment on any remaining claims because it did not unreasonably delay the adjudication of Plaintiffs' applications.**

To the extent that any claims remain in this district and are not mooted prior to the Court's consideration of this motion (*i.e.*, Plaintiffs' claim related to Lija Mariam Jose at USCIS's Texas Service Center), the Court should grant summary judgment in favor of Defendant because USCIS has not unreasonably delayed the adjudication of plaintiff's H-4 or EAD applications.

When a plaintiff seeks a writ of mandamus under the All Writs Act, 28 U.S.C. § 1651(a), to "compel agency action unlawfully withheld or unreasonably delayed," 5 U.S.C. § 706(1), the court "starts from the premise that issuance of the writ is an extraordinary remedy, reserved only for the most transparent violations of a clear duty to act." *In re Bluewater Network*, 234 F.3d 1305, 1315 (D.C. Cir. 2000). "The central question in evaluating 'a claim of unreasonable delay' is 'whether the agency's delay is so egregious as to warrant mandamus.'" *In re Core Commc'ns, Inc.*, 531 F.3d 849, 855 (D.C. Cir. 2008) (quoting *Telecomms. Research & Action Ctr. v. FCC* ("*TRAC*"), 750 F.2d 70, 79 (D.C. Cir. 1984)). Courts in this Circuit apply a six-factor test to determine whether agency action has been unreasonably delayed:

> (1) the time agencies take to make decisions must be governed by a rule of reason;
>
> (2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason;
>
> (3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake;
>
> (4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority;
>
> (5) the court should also take into account the nature and extent of the interests prejudiced by delay; and

(6) the court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is "unreasonably delayed."

*In re United Mine Workers of Am. Int'l Union*, 190 F.3d 545, 549 (D.C. Cir. 1999) (quoting *TRAC*, 750 F.2d at 80) (citations and quotation marks omitted).

A.    *Factors 1 and 2*

The first and second *TRAC* factors focus on whether the length of time for the agency to act satisfies a rule or reason and any specific timeline established by Congress.  First, Congress has provided no specific timetable for adjudication H-4 and EAD applications.

Defendants acknowledge that 8 U.S.C. § 1571(b) expresses a nonbinding preference that "nonimmigrant applications" be adjudicated within 30 days.  But the 30-day goal in § 1571 applies specifically to "a petition for a nonimmigrant visa under section 1184(c) of this title," which in turn governs certain specific petitions *by employers* for importing aliens as nonimmigrants, not applications for H-4 or EAD.  Further, courts have noted that the "sense of Congress" language in § 1571(b) is legislative dicta that does not create any obligation on the part of USCIS. *See Bemba v. Holder*, 930 F. Supp. 2d 1022, 1031 (E.D. Mo. 2013) ("Courts have held that this 'sense of Congress' is 'non-binding.' . . . If Congress had intended to make this standard mandatory, then it could have done so as it has in other instances."); *Ryan v. Dedvukaj*, No. 09-14178, 2009 WL 3809813, at *1–2 (E.D. Mich. Nov. 13, 2009) ("Section 1571(b) is merely a policy statement, worded in precatory terms; it does not create an obligation for Defendants to meet the . . . deadline, nor does it give Plaintiffs a right of enforcement.").

There is nothing inherently unreasonable about the amount of time that Plaintiffs' applications have been pending.  Currently, the only still-pending application was filed on June 4, 2020—about seven months ago.  *See* Peace Decl., App'x 1.  The length of time that it has been pending is a result the backlog of cases caused by the closure of Application Support Centers

during the COVID-19 pandemic.  *Id.* ¶ 11.  Courts have concluded that far longer wait times for immigration applications do not constitute unreasonable delay. *See Yavari v. Pompeo*, No. 19-02524, 2019 WL 6720995, at *8 (C.D. Cal. Oct. 10, 2019) ("District courts have generally found that immigration delays in excess of five, six, seven years are unreasonable, while those between three to five years are often not unreasonable.").

Further, as Plaintiffs point out, H-4 and EAD applications may be submitted up to six months before the prior authorization expires.  *See* Form I-129 Instructions at 27;[4] Compl. ¶ 17. Yet the average wait time among the Plaintiffs for I-539 applications at the time of their complaint was less than six months.  And Plaintiffs decline to specify when they completed their applications by submitting the necessary biometric information (for those who have done so), which is scheduled only after the application is filed.  *See generally* Compl.

In any event, even if the Court did regard a few months for the processing of an H-4 or EAD application as facially unreasonable, it would still not violate the rule of reason in the first *TRAC* factor.  The length of time alone is not sufficient to make a delay unreasonable.  *Mashpee Wampanoag Tribal Council, Inc. v. Norton*, 336 F.3d 1094, 1102 (D.C. Cir. 2003) (whether a delay should be deemed unreasonable "cannot be decided in the abstract, by reference to some number of months or years beyond which agency inaction is presumed to be unlawful, but will depend in large part . . . upon the complexity of the task at hand, the significance (and permanence) of the outcome, and the resources available to the agency"); *In re Barr Labs., Inc.*, 930 F.2d 72, 75 (D.C. Cir. 1991) (explaining that, although the agency missed a statutory deadline, "a finding that delay is unreasonable does not, alone, justify judicial intervention").  Instead, the Court should "look to the other TRAC factors in determining whether the delays at issue here under the Department's

---

[4] Available at https://www.uscis.gov/system/files_force/files/form/i-129instr-pc.pdf?download=1

processing structure comport with a "'rule of reason.'"  *Liberty Fund, Inc. v. Chao*, 394 F. Supp.

2d 105, 115 (D.D.C. 2005).

      B.    *Factor 4*

      The fourth *TRAC* factor—the effect of granting relief on the agency's competing

priorities—weighs heavily in favor of Defendants in itself and should also guide the Court's

application of the first factor.  Under this Circuit's precedent, a court will not compel agency action

where the result would be merely to expedite the consideration of a plaintiff's application ahead

of others.  *See Liberty Fund*, 394 F. Supp. 2d at 117 (courts will not compel agency action where

result "would mean putting [plaintiff] at the head of the queue at the expense of others"); *see also*

*Mashpee Wampanoag*, 336 F.3d at 1101 ("We agree with the Secretary that the district court erred

by disregarding the importance of there being 'competing priorities' for limited resources.  The

district court offered no legal justification for precluding the Secretary from relying upon her 'first-

come' procedure, and we can conjure none."); *In re Barr Labs.*, 930 F.2d at 75 ("The agency is in

a unique—and authoritative—position to view its projects as a whole, estimate the prospects for

each, and allocate its resources in the optimal way.").

      Here, as explained in the declaration of the Section Chief from the Texas Service Center

responsible for processing Plaintiffs' one remaining claim, the service centers are processing

applications in the ordinary course and has not afforded expedited consideration as a result of their

having filed a lawsuit.  Peace Decl. ¶ 2.  And all of Plaintiffs' applications are within the normal

processing times currently applicable to H-4 and EAD applications across the board. Thus,

ordering USCIS to process Plaintiffs' applications faster would simply have the effect of providing

them with preferential treatment at the expense of other applicants.  But Plaintiffs may not use a

mandamus action to muscle ahead in line of other waiting applicants.  *See Liberty Fund*, 394 F.

17

Supp. 2d at 120-21 (declining to compel adjudication of applications for labor certifications pending for two to four years where the result would be to move plaintiffs to the head of the queue).

In addition, the time required for USCIS to adjudicate H-4 applications is impacted by the agency's legitimate requirement that such applicants submit biometrics as an additional security check, and the agency's ability to collect that biometric information was suspended for a time due to the ongoing global pandemic involving COVID-19.  Peace Decl. ¶¶ 11-12.  It is well within USCIS's authority to require applicants or classes of applicants to submit biometrics, *see* 8 C.F.R. § 103.2(b)(9), and applicants attest on their I-539 applications that they understand that they will be required to appear and provide biometrics.[5]  After the applicant submits an application, he or she is scheduled for a biometrics appointment at a local USCIS office three weeks later and then has up to 90 days to appear.  The biometrics requirement therefore prohibits USCIS from adjudicating applications submitted with premium processing H-1B applications within 15 days and adds to the overall processing time for all H-4 applications.  Peace Decl. ¶ 13.  In addition, the agency has legitimately prioritized the health and safety of its staff and public health by closing its Application Support Centers during the COVID-19 outbreak in the United States.  Plaintiffs cannot override that prioritization in a mandamus action.  *See Mashpee Wampanoag*, 336 F.3d at 1101

C.      *Factors 3 and 5*

"The third and fifth factors overlap—the impact on human health and welfare and economic harm, and the nature and extent of the interests prejudiced by the delay."  *Liberty Fund*, 394 F. Supp. 2d at 118.  Plaintiffs contend that the time USCIS is taking to adjudicate their

---

[5] *See* https://www.uscis.gov/system/files_force/files/form/i-539-pc.pdf?download=1 (Form I-539 at 5 of 8 (rev. Feb. 4, 2019) containing certification that applicant "understand[s] that USCIS will require me to appear for an appointment to take my biometrics (fingerprints, photograph, and/or signature).

applications interrupts their ability to work.  These are purely economic harms, and do not implicate human health or welfare.  Further, while Plaintiffs may be "adversely impacted by their inability to obtain lawful employment and associated benefits . . . [it does not] rise to a level that would significantly change the . . . assessment of the unreasonableness of the delay in light of the importance of the agency's competing priorities" in collecting biometrics and processing applications in the normal course.  *Liberty Fund*, 394 F. Supp. 2d at 118.

> D.     *Factor 6*

The sixth and last *TRAC* factor provides that "the court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is 'unreasonably delayed.'" 750 F.2d at 80.  Conversely, the good faith of the agency in addressing the delay weighs against compelling action.  *See In re Am. Fed'n of Gov't Emps.*, 837 F.2d 503, 507 (D.C. Cir. 1988) (declining to issue a writ to expedite resolution of administrative appeals because, inter alia, "[the agency] has shown marked improvement in managing its docket, and there is little reason to believe that this Court's order is necessary to sustain that improvement or would be helpful in spurring greater effort").  USCIS has shown good faith by taking measures to address the increased time to adjudicate applications.  It accepts requests to expedite applications.  Peace Decl. ¶ 14. And it has proposed increasing application fees so that it may "collect sufficient fee revenue to fund additional staff that will support FY 2019/2020 workload projections."  84 Fed. Reg. at 62,294.

In sum, application of the *TRAC* factors to this case shows that any delay by USCIS is "so egregious as to warrant mandamus." *TRAC*, 750 F.2d at 79.  Consequently, Defendants are entitled to judgment as a matter of law.

## CONCLUSION

For the foregoing reasons, the Court should dismiss those claims that are moot and then sever the remaining claims and transfer them to more appropriate judicial districts.  Alternatively, should any claims remain here, the Court should grant USCIS summary judgment on those claims.

Dated: January 11, 2021                    Respectfully submitted,

                                           MICHAEL R. SHERWIN
                                           Acting United States Attorney

                                           BRIAN P. HUDAK
                                           Acting Chief, Civil Division

                                           */s/ Christopher C. Hair*
                                           CHRISTOPHER C. HAIR, PA Bar #306656
                                           Assistant United States Attorney
                                           555 4th Street, N.W.
                                           Washington, District of Columbia 20530
                                           Telephone: (202) 252-2541
                                           Email: christopher.hair@usdoj.gov

                                           *Counsel for Defendants*

20