UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MALLIKARJUN EAGA, *et al.*,<br><br>          *Plaintiffs*,<br><br>v.<br><br>U.S. CITIZENSHIP AND IMMIGRATION<br>SERVICES, *et al.*,<br><br>          *Defendants*. | Civil Action No. 20-2682 (RBW) |

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' RENEWED MOTION TO DIMISS AND TRANSFER VENUE

Plaintiffs are 10 individuals from all over the country (but not the District of Columbia) who, at the time of suit, had certain applications for nonimmigrant benefits pending at various service centers operated by U.S. Citizenship and Immigration Services ("USCIS") in four different cities (but not the District of Columbia). As discussed below, Plaintiffs' Complaint is moot as there is no live controversy between the Parties because Plaintiffs' applications have already been decided by USCIS in the normal course of its processing. And to the extent the Court allows any claims to remain here, it should sever those claims and transfer them to the appropriate judicial district.

## BACKGROUND

*A.      Procedural History*

Plaintiffs filed this lawsuit on September 21, 2020. *See* Compl. (ECF No. 1). Defendants moved to dismiss or sever these various claims, each of which presents its own circumstances, and transfer them to the more appropriate judicial districts wherein the service centers adjudicating the applications are located. *See Defs.' Mot. to Dismiss, to Transfer Venue, or for Summ. J.* (ECF

No. 6) at 1.  Defendants also moved for summary judgment based on the only application that was pending at the time at USCIS's Texas Service Center.  Defendants supported their motion with a declaration from John M. Peace, which demonstrated that 9 of the 10 Plaintiffs had received an approval.  *See* Peace Decl. (ECF No. 6-3), App'x 1.

Before Plaintiffs responded to Defendants' motion, USCIS's Texas Service Center adjudicated and approved the final remaining application relevant to this lawsuit.  *See* Exhibit A. Thereafter, Plaintiffs submitted an amended complaint, which added a claim challenging USCIS's implementation of biometrics at its service centers nationwide.  Plaintiffs also submitted a response to Defendants' motion, arguing that their amended complaint moots Defendants' motion.  *See* ECF No. 10 at 2.

B.      *Statutory Framework*

The Immigration and Nationality Act ("INA"), 8 U.S.C. §§ 1101, *et seq.*, regulates the admission of aliens into the United States, including the temporary admission of nonimmigrants for a particular purpose.  Relevant here, the H-1B program allows for the temporary admission of foreign citizens to work for American employers in "specialty occupation[s]," as defined by the Act. 8 U.S.C. § 1101(a)(15)(H)(i)(B).  An employer seeking to hire a nonimmigrant employee must file an H-1B petition on Form-129, Petition for a Nonimmigrant Worker, with USCIS. 8 C.F.R. § 214.2(h)(2)(i)(A).[1]  If USCIS approves the petition, the nonimmigrant employee's approved status is valid for an initial period of up to three years and can be extended for up to an additional three years.     8  U.S.C.   § 1184(g)(4);   8   C.F.R.   §§ 214.2(h)(9)(iii)(A)(1), 214.2(h)(15)(ii)(B)(1).  For individuals who are the beneficiaries of certain pending or approved

---

[1]      Before an employer may seek an H-1B visa for a prospective nonimmigrant employee, it must make various declarations in a Labor Condition Application with the Department of Labor. *See* 20 C.F.R. § 655.730(a).

employment-based petitions for immigrant status or labor-certification applications, H-1B status may be further extended beyond the six-year maximum. *See Am. Competitiveness in the Twenty– First C. Act*, Pub. L. No. 106–313, §§ 104(c), 106(a) (2000), as amended by 21st C. Dep't. of Justice Appropriations Authorization Act, Pub. L. No. 107–273, § 11030A (2002) (codified at 8 U.S.C. § 1184 note).  USCIS typically considers H-1B petitions in the order in which they are received, but employers may opt for premium processing, under which USCIS guarantees adjudication within fifteen days in exchange for a fee.  *See Law Office of Azita Mojarad v. Aguirre*, No. 05-0038, 2006 WL 785415, at *1 (D.D.C. Mar. 27, 2006).

The INA also authorizes nonimmigrant "H-4 status," which allows the spouse and minor children of H-1B nonimmigrants to be admitted with the H-1B nonimmigrant to the United States. *See* 8 U.S.C. § 1101(a)(15)(H).  In order for an applicant within the United States to apply for or extend H-4 status, the applicant must submit a completed Form I-539, Application to Extend/Change Nonimmigrant Status.  Once approved, the H-4 status is subject to the same period of admission as the related H-1B status.  *See* 8 C.F.R. § 214.2(h)(9)(iv).  Nonimmigrants with H-4 status are allowed to live—but not work—in the United States.  *See Save Jobs USA v. Dep't of Homeland Sec.*, 105 F. Supp. 3d 108, 111 (D.D.C. 2015).  In 2015, however, USCIS modified existing regulations to allow certain H-4 nonimmigrants to apply for employment authorization if the related H-1B nonimmigrant has shown an intent to stay in the United States and become a legal permanent resident.   80 Fed. Reg. 10,284, 10,285 (Feb. 25, 2015); *see also* 8 C.F.R. §§ 214.2(h)(9)(iv), 274a.12(c)(26).

To request employment authorization, an eligible H-4 nonimmigrant must file an Application for Employment Authorization (Form I-765) in accordance with 8 C.F.R. § 274a.13, and provide evidence that, among other things, establishes the H-4 applicant's eligibility for the

benefit, the relationship between the H-4 applicant and the H-1B nonimmigrant, and the eligibility of the H-1B nonimmigrant. 8 C.F.R. § 214.2(h)(9)(iv). Since March 11, 2019, USCIS has required all applicants submitting an I-539 application for H-4 status to appear at the application support center closest to the applicant's primary address and provide biometric information (i.e., fingerprints, photograph, or signature). *See* https://go.usa.gov/xdYxV.[2] If approved, the H-4 nonimmigrant will receive an H-4 Employment Authorization Document ("EAD").

Because the adjudication of the application for H-4 status (Form I-539) and the application for employment authorization (Form I-765) are interrelated and submitted to the same USCIS locations, USCIS allows applicants to file both forms concurrently. 80 Fed. Reg. at 10,298. But USCIS cannot adjudicate the Form I-765 until a determination is made on the underlying Form I-539. *Id.* at 10,297.

C.     *Plaintiffs' Applications*

Plaintiffs are 10 individuals residing in various states (but not the District of Columbia), each of whom has filed either an I-539 application for H-4 status (or extension of status) or an I-765 application for EAD or both, which applications are being or have been processed at one of USCIS's four service centers. *See* Compl. (ECF No. 1) ¶ 13. Plaintiffs contend that USCIS unreasonably delayed the adjudication of their applications because they have been waiting more than 6 months for adjudication of their H-4 and EAD applications. *Id.* ¶ 32. As of this filing, however, all Plaintiffs have had their applications adjudicated in the normal course of USCIS's processing despite prolonged closures of application support centers during the global COVID-19 pandemic. *See* Peace Decl., App'x 1.

---

[2]     USCIS may require any applicant or group of applicants to appear for the collection of biometric information. 8 C.F.R. § 103.2(b)(9).

## STANDARDS

A.    *Severance under Rule 21*

Federal Rule of Civil Procedure 21 provides the Court with broad discretion to "sever any claim against a party."  Fed. R. Civ. P. 21; *see also M.M.M. on behalf of J.M.A. v. Sessions*, 319 F. Supp. 3d 290, 294 (D.D.C. 2018); *Hispanic Affairs Project v. Perez*, 206 F. Supp. 3d 348, 373 (D.D.C. 2016); *Spaeth v. Mich. St. Univ. Coll. of Law*, 845 F. Supp. 2d 48, 55 n.11 (D.D.C. 2012); 7 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 1689 (3d ed.) ("Even when venue is proper as to all defendants, the court may sever a claim against a party and transfer it to a more convenient forum[.]").  If a claim is severed, the severed claim will proceed as a separate and independent cause of action and will result in a separate judgment.  *M.M.M.*, 319 F. Supp. 3d at 294; *Pinson v. Dep't of Justice*, 74 F. Supp. 3d 283, 288 n.7 (D.D.C. 2014); *see also Rice v. Sunrise Express, Inc.*, 209 F.3d 1008, 1013 (7th Cir. 2000) ("Under Rule 21 . . . severance creates two separate actions where previously there was but one.").

B.    *Transfer under 28 U.S.C. § 1404(a)*

Under 28 U.S.C. § 1404(a), a district court may transfer a civil action to any other district "[f]or the convenience of the parties and witnesses, in the interest of justice" so long as the transferee district is one where the case "might have been brought."  Subsection 1404(a) affords the Court broad discretion in determining whether transfer to another district is appropriate.  *See Ravulapalli v. Napolitano*, 773 F. Supp. 2d 41, 55 (D.D.C. 2011) (citing *SEC v. Savoy Indus. Inc.*, 587 F.2d 1149, 1154 (D.C. Cir. 1978)).  The moving party bears the burden of establishing that plaintiff's choice of forum is inappropriate and that the case should be transferred to another venue. *See So. Utah Wilderness Alliance v. Norton*, 315 F. Supp. 2d 82, 86 (D.D.C. 2004).  To meet that burden, the moving party must make two showings.  First, the movant must establish that the

plaintiff could have brought the action in the proposed transferee district.  *See Aracely v. Nielsen*, 319 F. Supp. 3d 110, 127–28 (D.D.C. 2018) (citing *Van Dusen v. Barrack*, 376 U.S. 612, 616-17 (1964)).  Second, the movant must show that "considerations of convenience and the interest of justice weigh in favor of transfer to that district."  *See Aracely*, 319 F. Supp. 3d at 127 (citing *Trout Unlimited v. Dep't of Ag.*, 944 F. Supp. 13, 16 (D.D.C. 1996)).  In evaluating whether defendants have made this second showing, courts typically weigh several private- and public-interest factors. *See id.*; *Ravulapalli*, 773 F. Supp. 2d at 55-56.

C.   *Dismissal under Rule 12(b)(1)*

Under Federal Rule of Civil Procedure 12(b)(1), a claim must be dismissed if a district court lacks jurisdiction to entertain the claim. In deciding a motion under Rule 12(b)(1), a court must "accept as true all of the factual allegations contained in the complaint" and draw all reasonable inferences in favor of the plaintiff, *Brown v. District of Columbia*, 514 F.3d 1279, 1283 (D.C. Cir. 2008), but courts are "not required . . . to accept inferences unsupported by the facts or legal conclusions that are cast as factual allegations," *Rann v. Chao*, 154 F. Supp. 2d 61, 64 (D.D.C. 2001).  Further, the "court may consider such materials outside the pleadings as it deems appropriate to resolve the question whether it has jurisdiction in the case." *Scolaro v. D.C. Bd. of Elections & Ethics*, 104 F. Supp. 2d 18, 22 (D.D.C. 2000).  Ultimately, the plaintiff bears the burden of establishing the Court's jurisdiction, *McNutt v. General Motors Acceptance Corp.*, 298 U.S. 178, 182-83 (1936), and where jurisdiction does not exist, "the court cannot proceed at all in any cause," *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998).  A claim that has become moot is subject to dismissal for lack of jurisdiction under Rule 12(b)(1)." *Brustein & Manasevit, PLLC v. Dep't of Educ.*, 30 F. Supp. 3d 1, 5 (D.D.C. 2013) ("Rule 12 (b)(1) is the proper mechanism for a defendant to assert that an action is moot.").

**ARGUMENT**

**I.     Plaintiffs' claims are moot and must be dismissed.**

Here, USCIS has already adjudicated the applications of all of the Plaintiffs in this action

in the normal course of its standard processing, thereby rendering those claims moot and depriving

the Court of jurisdiction to consider them.  A claim becomes moot "when the issues presented are

no longer live or the parties lack a legally cognizable interest in the outcome."  *Schmidt v. United*

*States*, 749 F.3d 1064, 1068 (D.C. Cir. 2014) (quoting *Larsen v. U.S. Navy*, 525 F.3d 1, 3 (D.C.

Cir. 2008)).  This can occur when "the court can provide no effective remedy because a party has

already obtained all the relief that it has sought."  *Mittleman v. Postal Regulatory Com'n*, 757 F.3d

300, 303 (D.C. Cir. 2014) (internal quotation marks omitted).  In this case, Defendants previously

submitted a declaration that demonstrated that USCIS adjudicated the applications of 9 Plaintiffs.

*See* Peace Decl., App'x 1.  The final adjudication relevant to this matter occurred on January 27,

2021.  *See* Exhibit A.  Accordingly, the applications were not "pending" at the time Plaintiffs

submitted their amended complaint.  *See* Am. Compl. ¶ 21.[3]  Because there is no live controversy

between the parties, this action should be dismissed as moot.  Accordingly, all Plaintiffs' claims

should be dismissed as moot.  *See Pasem v. USCIS*, Civ. A. No. 20-0344, 2020 WL 2514749, at

*5 (D.D.C. May 15, 2015) (dismissing moot claims prior to transfer in precisely these

circumstance *Dvorak v. Dep't of Homeland Sec.*, Civ. A. No. 18-1941, 2019 WL 1491743, at *1

(D.D.C. Apr. 3, 2019) (dismissing action as moot because "plaintiffs have received the relief they

requested: final action on their pending visa applications"); *Kaur v. Chertoff*, 489 F. Supp. 2d 52,

---

[3]     Indeed, Plaintiffs' allegation that each of their applications remains "pending" is puzzling
because undersigned counsel for Defendants forwarded copies of each of USCIS's approval
notices to Plaintiffs' counsel, as agreed, prior to the filing of the amended complaint.  *See* ECF
No. 4 at 2 (noting that Defendants "will continue to provide copies of USCIS's approvals to
counsel" as adjudications occur in the normal course).

58 n.9 (D.D.C. 2007) (dismissing as moot claim regarding an allegedly wrongful denial of EAD application was moot after the plaintiff received the employment authorization).  Plaintiffs' claims should be severed and transferred to other, more appropriate judicial districts.

Even if the Court disagrees that Plaintiffs' claims are now moot, the Court should exercise its discretion to sever the claims in this case and transfer them to more appropriate districts.  The 10 Plaintiffs in this case reside in 7 different states—none are from the District of Columbia—and their respective applications for H-4 status (or extension of status) or EAD have been adjudicated by one of four different USCIS service centers in either Nebraska, Vermont, Texas, or California. Despite the geographically dispersed nature of both the residences of the Plaintiffs and the USCIS offices handling their applications, Plaintiffs attempt to pool their various claims and pour them into this Court.  Further, the fact that Plaintiffs now purport to challenge USCIS's decision to implement a requirement for biometrics at all of its Service Centers does not make venue any more appropriate in this district.

A.    Severance

As a first step to effectuating transfer, the Court should sever Plaintiffs' individual claims, each of which turns on its own unique facts and circumstances.  Cases transferred pursuant to § 1404(a) must be transferred in their entirety.  *See M.M.M.*, 319 F. Supp. 3d at 295 (citing 15 Wright, Miller & Kane, *Federal Practice & Procedure* § 3846 (4d ed. 2018)).  Where all the claims in a single case cannot be transferred to a single transferee district, the Court has authority to sever those claims as a precursor to transfer.  *See Pinson*, 74 F. Supp. 3d at 288 (severing claims prior to transferring venue under § 1404(a)); *Spaeth*, 845 F. Supp. 2d at 57 n.13 (same).  "In determining whether to join or sever claims, courts employ the permissive joinder requirements articulated in Rule 20(a), which permits claims to be joined if: 1) the claims arise from the same transaction or

8

occurrence, or series of transactions or occurrences; and 2) any question of law or fact common to all plaintiffs arose in the action." *Pinson*, 74 F. Supp. 3d at 288 (citing Fed. R. Civ. P. 20(a)). Whether or not a set of claims meet the permissive joinder requirements, however, the district court may, at its discretion, sever claims to effectuate transfer. *See id.*; *see also M.K. v. Tenet*, 216 F.R.D. 133, 137 (D.D.C. 2002) ("The determination of a motion to sever is within the discretion of the trial court.") (citation omitted).

Severance is warranted here whether the Court chooses to apply the permissive joinder requirements of Rule 20(a) or exercise its discretion. Under Rule 20(a), to satisfy the "same transaction or occurrence" prong of Rule 20(a), the claims must be logically related. *See Davidson v. District of Columbia*, 736 F. Supp. 2d 115, 119 (D.D.C. 2010) ("'[A]ll 'logically related' events entitling a person to institute a legal action against another generally are regarded as comprising a transaction or occurrence.'"). "The movant, however, cannot join parties 'who simply engaged in similar types of behavior . . . [but are] otherwise unrelated; some allegation of concerted action . . . is required.'" *Pinson*, 74 F. Supp. 3d at 289 (quoting *Spaeth*, 845 F. Supp. 2d at 53). The other prong of Rule 20(a) requires that "some common question of law or fact as to all of the plaintiffs' claims, [but] not that all legal and factual issues be common to all the plaintiffs." *Disparte v. Corp. Exec. Bd.*, 223 F.R.D. 7, 10-11 (D.D.C. 2004) (citing *Mosley v. Gen. Motors Corp.*, 497 F.2d 1330, 1334 (8th Cir. 1974)).

The Plaintiffs in this case do not satisfy these requirements. Each of the 10 individual Plaintiffs claims that USCIS unreasonably delayed the adjudication of his or her H-4 and/or EAD application. *See* Compl. ¶¶ 3, 21. But the similarities end there. The Plaintiffs filed their applications on different dates, and their applications were pending for significantly different periods of time. *See* Peace Decl., App'x 1. The average times required to process the different

applications is not the same. *See* Peace Decl. ¶ 5 (noting the average wait time at the Texas Service Center). Also, Plaintiffs' applications were handled at four different USCIS service centers around the country, each of which presents its own unique circumstances regarding resources and average wait times. For these reasons, Plaintiffs' claims are not logically related, present different factual circumstances, and should be severed under the criteria of Rule 20(a).

But even if the Court determines that the claims here are eligible for permissive joinder under Rule 20(a), it should nevertheless exercise its discretion and sever them in order to effectuate transfers to more appropriate judicial districts. Indeed, "[c]ourts have discretion to sever parties to effectuate transfer for judicial economy and convenience of the parties." *Pasem*, 2020 WL 2514748, at *4 (severing mandamus claims similar to those at issue here for purposes of transferring them to the judicial districts wherein the service centers processing the underlying applications were located).

B.     *Transfer*

"A § 1404 motion to transfer poses two questions: Could the plaintiff have sued in the transferee court? And if so, should it have?" *McAfee, LLC v. USCIS*, Civ. A. No. 19-2981, 2019 WL 6051559, at *1 (D.D.C. Nov. 15, 2019). The answers to these questions here permit and support transfer outside of the District of Columbia. This case presents precisely the same transfer situation as *Pasem*, and the Court should transfer these claims for the same reasons.

The first question turns on whether venue is proper in the transferee district under the federal venue statute. *See id.* That statute allows a suit against a federal officer or employee to be brought "in any district where a defendant resides, where the underlying claim arose, or—if no real property is involved—where the plaintiff resides." 28 U.S.C. § 1391(e)(1). Under this provision, each of the Plaintiffs in this case could have brought his or her claim in at least two

districts other than the District of Columbia. *First*, because each of the Plaintiffs resides in the United States (but not in the District of Columbia) and because this case involves no real property, he or she could have filed suit in the district of his or her residence. *See id.* § 1391(e)(1)(C). *Second*, in APA cases such as this, the underlying claim typically arises "where the decisionmaking process occurred." *Gyau v. Sessions*, Civ. A. No. 18-0407, 2018 WL 4964502, at *1 (D.D.C. Oct. 15, 2018). Here, Plaintiffs' H-4 and EAD applications were handled by one of four USCIS service centers in other judicial districts: the Nebraska Service Center in Lincoln, Nebraska (D. Neb.), the Texas Service Center in Dallas, Texas (N.D. Tex.), the Vermont Service Center in Saint Albans, Vermont (D. Vt.), or the California Service Center in Laguna Niguel, California (C.D. Cal.). *See* Peace Decl., App'x 1. Each of the Plaintiffs could have brought his or her claims in the judicial district housing the USCIS service center processing his or her application. *See Pasem*, 2020 WL 2514749, at *3 (plaintiffs could have brought mandamus claims for adjudication of H-4 and EAD applications in the judicial districts where the service centers are located); *McAfee*, 2019 WL 6051559, at *1 (plaintiff could have brought action challenging adjudication of its H-1B petition in the Central District of California because the petition was processed by USCIS's California Service Center). Due to the number of individual Plaintiffs in this case and the vast disparity in their residences, *see* App'x 1, Defendants propose that the more efficient and appropriate course would be for the Court to sever the claims and transfer them to one of the four districts housing the USCIS service centers responsible for adjudicating Plaintiffs' H-4 and EAD applications.

In answering the second transfer question—whether the case should have been brought elsewhere—courts in this district weigh a series of private- and public-interest factors. *See Ravulapalli v. Napolitano*, 773 F. Supp. 2d 41, 55-56 (D.D.C. 2011). The private-interest factors

typically include: "1) the plaintiff's choice of forum, 2) the defendant's choice of forum, 3) where the claim arose, 4) the convenience of the parties, 5) the convenience of the witnesses, particularly if important witnesses may actually be unavailable to give live trial testimony in one of the districts, and 6) the ease of access to sources of proof." *Montgomery v. STG Int'l, Inc.*, 532 F. Supp. 2d 29, 32-33 (D.D.C. 2008). "The public factors usually weighed in considering a motion to transfer include: 1) the transferee's familiarity with the governing laws, 2) the relative congestion of each court, and 3) the local interest in deciding local controversies at home." *Id.* at 34.

With regard to the private interests, all but one support transfer. Plaintiffs' claims all arose elsewhere in districts housing the USCIS service centers responsible for handling their respective applications. As a result, those districts will be more convenient for the government, potential witnesses, and evidence because of their proximity to the employees who are responsible for processing plaintiffs' applications. *See Pasem*, 2020 WL 2514749, at *4 (finding that these private interests favor transfer of similar mandamus action to service center districts); *W. Watersheds Project v. Pool*, 942 F. Supp. 2d 93, 97-103 (D.D.C. 2013) (transferring case seeking to compel agency action unlawfully delayed to the district in which the field office responsible for the relevant decision was located based in part on these factors). Plaintiffs, however, would enjoy no convenience from litigating their case here because they are geographically dispersed all over the country and one of their counsel of record, Michael E. Piston, has his offices in New York, NY. *See* App'x 1; Compl. at pp. 10-11. Defendants, for their part, prefer transfer to the service-center districts. And while the Plaintiffs (or Plaintiffs' counsel) apparently prefer to amalgamate their claims in this district, "such deference is minimized when the forum chosen is not the plaintiff's home forum and no plaintiff resides in the District of Columbia. In addition, deference to the

plaintiff's choice of forum can be overcome when the balance of convenience is strongly in favor of the defendant." *Pasem*, 2020 WL 2514749, at *4 (quotation marks and citations omitted).  That is the situation here.

The public factors also mostly favor transfer.  The first public interest—familiarity with the governing laws—appears neutral. Federal law governs this case, and federal courts are generally regarded as "equally familiar" with applying federal law.  *Pasem*, 2020 WL 2514749, at *3 (citing *Al-Ahmed v. Chertoff*, 564 F. Supp. 2d 16, 20 (D.D.C. 2008)).  Each court's relative congestion and caseload is also largely neutral.  This district has a larger number and percentage of civil cases that have been pending for more than three years than does the Central District of California, the District of Vermont, and the District of Nebraska.[4]  This is particularly true of the District of Nebraska, where most of the claims would be transferred.  That district has only 33 civil cases that have been pending for more than three years (5% of its total) compared to 663 in this district (13% of the total).  While the Northern District of Texas does have more three-year-old cases than this district, it resolves civil cases in roughly the same amount of time: 6.7 months there compared to 5.6 months here.  *See Pasem*, 2020 WL 2514749, at *3 (finding this factor neutral in these circumstances).  The third public interest—the local interest in resolving the controversy— favors transfer because "courts have 'a local interest in having localized controversies decided at home," including even "controversies requiring judicial review of an administrative decision." *Pasem*, 2020 WL 2514749, at *3 (quoting *Gyau*, 2018 WL 4964502, at *2 (internal quotations omitted)).

---

[4]     *See*     https://www.uscourts.gov/sites/default/files/data_tables/fcms_na_distprofile0630. 2019.pdf

Plaintiffs' belated challenge to USCIS's biometric policy does not make venue any more appropriate in this district.  Indeed, "cases claiming to be raising national policy issues are still not appropriately venued here when countervailing considerations strongly favor a transfer." *Montgomery v. Barr*, --- F. Supp. 3d ---, 2020 WL 6939808, at *8 (D.D.C. Nov. 25, 2020) (citing *Starnes v. McGuire*, 512 F.2d 918 (D.C. Cir. 1974)).  Although Defendants anticipate that Plaintiffs may argue that their policy challenge cements venue here, "[c]ourts in this circuit must examine challenges to personal jurisdiction and venue carefully to guard against the danger that a plaintiff might manufacture venue in the District of Columbia."  *Cameron v. Thornburgh*, 983 F.2d 253, 256 (D.C. Cir. 1993).  Plaintiffs challenge the biometrics policy because it "adds to the overall processing times" of their applications, Am. Compl. ¶ 15, and makes it "unlikely" to adjudicate their applications within six months, *id.* ¶ 16.  Accordingly, the gravamen of Plaintiffs' Complaint is that USCIS unreasonably delayed their respective applications, which took place entirely within the District of Vermont, District of Nebraska, Northern District of Texas, and Central District of California.  *See Pasem*, 2020 WL 2514749, at *4 (concluding that the biometrics policy "affects every plaintiff . . . in different ways, and the evidence of how it has affected each plaintiff is best available at the service center where they submitted their applications).

In any event, even if their allegedly unreasonable delays were solely caused by the biometric policy, "the connection between the events at issue in this case and the District of Columbia is still tenuous at best."  *Bourdon v. Dep't of Homeland Sec.*, 235 F. Supp. 3d 298, 306-07 (D.D.C. 2017); *cf. Pearson v. Rodriguez*, 174 F. Supp. 3d 210, 213 (D.D.C. 2016) (rejecting argument that policy challenge supported venue in this district because "attenuated or insignificant involvement by an official in the District of Columbia does not support venue here.") (quotation omitted).  Pasem, at *4 (concluding that the policy affects every plaintiff, it does so in different

14

ways, and the evidence of how it has affected each plaintiff is best available at the service center where they submitted their applications. *Huskey v. Quinlan*, 785 F. Supp. 4, 7 (D.D.C. 1992) ("Even assuming, arguendo, that a true national policy issue was before this Court, Plaintiff raises claims 'related to his particular circumstances' which may likely 'require[ ] evidence from himself and other persons better available in [the district where the policy was implemented].'" (quoting *Starnes v. McGuire*, 512 F.2d 918, 925 (D.C. Cir. 1974))).  Importantly, USCIS is no longer headquartered in this District, having moved its headquarters to Camp Springs, Maryland in November 2020.  *See, e.g.,* USCIS Policy Alert of 11/17/2020, https://www.uscis.gov/sites/default/files/document/policy-manual-updates/20201117_AOSDiscretion.pdf  (reflecting updated Camp Springs, MD address for the USCIS Office of the Director); USCIS Policy Alert of 12/4/2020, https://www.uscis.gov/sites/default/files/document/policy-manual-updates/20201204-N-648.pdf (same).

For these reasons the private- and public-interest factors, on balance, favor transfer.  The Court should therefore sever Plaintiffs' claims and transfer each of them to the judicial district encompassing the USCIS service center responsible for completing the adjudication each plaintiff seeks to compel.  *See McAfee*, 2019 WL 6051559, at *2 (applying the same analysis and transferring a suit challenging USCIS's adjudication of a petition for H-1B status to the judicial district housing the service center responsible for handling the petition); *see also Chauhan v. Napolitano*, 746 F. Supp. 2d 99, 105 (D.D.C. 2010) (transferring mandamus case to district where immigration applications were pending); *Huang v. Napolitano*, 721 F. Supp. 2d 46, 56 (D.D.C. 2010); *Aftab v. Gonzalez*, 597 F. Supp. 2d 76, 79 (D.D.C. 2009) (same); *Al-Ahmed v. Chertoff*, 564 F. Supp. 2d 16, 18 (D.D.C. 2008) (same); *Abusadeh v. Chertoff*, Civ. A. No. 06-2014, 2007 WL

2111036, at *9 (D.D.C. July 23, 2007) (same); *Mohammadi v. Scharfen*, 609 F. Supp. 2d 14, 18-19 (D.D.C. 2009).

## CONCLUSION

For the foregoing reasons, the Court should dismiss Plaintiffs' Complaint as moot or, in the alternative, sever Plaintiffs' claims and transfer them to more appropriate judicial districts.

Dated: February 16, 2021                     Respectfully submitted,

                                             MICHAEL R. SHERWIN
                                             Acting United States Attorney

                                             BRIAN P. HUDAK
                                             Acting Chief, Civil Division

                                             */s/ Christopher C. Hair*
                                             CHRISTOPHER C. HAIR, PA Bar #306656
                                             Assistant United States Attorney
                                             555 4th Street, N.W.
                                             Washington, District of Columbia 20530
                                             Telephone: (202) 252-2541
                                             Email: christopher.hair@usdoj.gov

                                             *Counsel for Defendants*